IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RICHARD WYATT and <br> BILLIE WYATT, <br>     Plaintiffs, <br> v. <br> LIBERTY MORTGAGE CORPORATION, et al., <br>     Defendants. | No. 4:13-cv-00317-DGK |

## ORDER DISMISSING FRAUDULENTLY JOINED DEFENDANT AND GRANTING SUMMARY JUDGMENT FOR REMAINING DEFENDANTS

This case arises from the non-judicial foreclosure sale of Plaintiffs Richard and Billie Wyatt's residence in Blue Springs, Missouri. Prior to the foreclosure sale, Plaintiffs filed a *pro se* petition in the Circuit Court of Jackson County, Missouri against Defendants Liberty Mortgage Corporation ("Liberty"), Branch Banking and Trust Company ("BB&T"), and Millsap & Singer, P.C. ("Millsap") (collectively the "Defendants"). BB&T and Liberty removed here, and the Court denied Plaintiffs' motion to remand, finding that Millsap was fraudulently joined to defeat diversity jurisdiction (Doc. 17).

Plaintiffs then filed a three-count amended complaint (the "Amended Complaint") against Liberty, BB&T, and Millsap, alleging claims for quiet title (Count I), wrongful foreclosure (Count II), and conversion, unjust enrichment, and breach of a fiduciary duty (Count III). Now before the Court is Defendants' motion for summary judgment (Doc. 21).

Because Plaintiffs once again fraudulently joined Millsap in an attempt to defeat diversity jurisdiction, the claims against it are DISMISSED WITHOUT PREJUDICE. Having jurisdiction to entertain the summary judgment motion and finding that there is no dispute of material fact

and that Liberty and BB&T are entitled to judgment as a matter of law, the Court GRANTS summary judgment in their favor.

## Undisputed Material Facts

The Court treats the following facts as undisputed.[1] On May 22, 2009, Plaintiffs borrowed $160,459.00 from Liberty to finance the purchase of a home in Blue Springs, Missouri (the "Property"). On this same day, Plaintiffs executed a promissory note (the "Note") in this amount, and secured the loan with a deed of trust (the "Deed of Trust"), which was later recorded with the Jackson County Recorder's Office. The Deed of Trust: named Liberty as the lender; Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Liberty, its successors, and its assigns; and Charterland Title, LLC ("Charterland") as trustee. It also contained several provisions governing foreclosure. Under the agreement, the lender or its nominee possessed the power to foreclose upon the Property in the event that Plaintiffs defaulted on the loan. Prior to any such sale, the trustee was required to give notice to Plaintiffs and the public, but no provision required the trustee or the lender to produce the Note prior to foreclosing. At the sale, the trustee was required to sell the Property to the highest bidder, and the lender was allowed to purchase it.

Shortly after the May 2009 loan origination, Liberty assigned the Note to its then-parent company BB&T via a specific endorsement. Around that same time, BB&T endorsed the Note in blank, but BB&T has retained it ever since. In 2011, Liberty was dissolved.

After routinely satisfying their payment obligations for several years, Plaintiffs missed several monthly installments in 2012. The loan eventually settled into default. This default was

---

[1] To support its statement of facts, Defendants presented an affidavit from BB&T Vice President Richard Miller and other documents. Plaintiffs not only failed to respond to Defendants' statement of the facts, but they also failed to present any evidentiary materials to counter Defendants'. Thus, pursuant to Local Rule 56.1 and Federal Rule of Civil Procedure 56(e), the Court treats Defendants' version of the facts as undisputed.

2

Case 4:13-cv-00317-DGK   Document 39   Filed 01/21/15   Page 2 of 12

followed by BB&T initiating several transfers that culminated in foreclosure. On January 7, 2013, MERS assigned the Deed of Trust to BB&T, which was recorded three days later. BB&T then appointed Millsap as the successor trustee, which was recorded on January 22, 2013. BB&T subsequently ordered Millsap to foreclose. Millsap then scheduled the foreclosure sale for February 20, 2013, and disseminated notice of such to Plaintiffs and the public. At the foreclosure sale, Millsap sold the Property to BB&T via a credit bid in the amount of $172,846.18. Millsap finalized the sale by recording a trustee's deed with the Jackson County Recorder's Office on February 27, 2013.

Prior to the foreclosure sale, Plaintiffs filed a three-count lawsuit in the Circuit Court of Jackson County, Missouri, alleging a variety of wrongs. After removal and remand denial, Plaintiffs filed the Amended Complaint. Defendants now seek summary judgment on all counts.

## Discussion

### I. The Court has subject-matter jurisdiction over this dispute.

Although not raised by the parties, the Court must first determine whether it possesses subject-matter jurisdiction to entertain the summary judgment motion. *See* Fed. R. Civ. P. 12(h)(3). In particular, the Court has concerns that Millsap's continued presence in this lawsuit deprives it of jurisdiction. Previously, the Court found that it possessed subject-matter jurisdiction notwithstanding the fact that Millsap and Plaintiffs were all citizens of Missouri, because it determined that Plaintiffs fraudulently joined Millsap to defeat jurisdiction. *See Wyatt v. Liberty Mortg. Corp.*, No. 4:13-CV-00317, 2013 WL 6730298, at *3-6 (W.D. Mo. Dec. 19, 2013). Because Plaintiffs once again joined Millsap under the Amended Complaint with similar allegations to the initial complaint, the Court again questions whether Millsap is fraudulently joined.

3

When a district court determines that a defendant is fraudulently joined, it should dismiss the claims against it for lack of subject-matter jurisdiction. *Wivell v. Wells Fargo Bank, N.A.*, No. 13-2763, 2014 WL 6463030, at *5 (8th Cir. Nov. 19, 2014). A defendant is fraudulently joined "if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant," here Millsap. *Filla v. Norfolk & S. Ry.*, 336 F.3d 806, 810 (8th Cir. 2003) (internal quotations omitted). However, the joinder is not fraudulent "if there is a reasonable basis in fact and law supporting the claim," even if that reasonable basis is speculative. *Id.* at 810 & n.10. In making this determination, the court typically confines its analysis to the facts alleged in the complaint, unless other record evidence clearly shows those allegations lack factual support. *See Block v. Toyota Motor Corp.*, 665 F.3d 944, 945 (8th Cir. 2011) (noting that courts may look beyond the pleadings to determine whether there is factual support for a claim).

With this standard in mind, the Court now reviews the claims against Millsap. Liberally construing the Amended Complaint, Plaintiffs raise three distinct causes of action against Millsap: (1) a quiet title claim (Count I); (2) a wrongful foreclosure claim (Count II); and (3) a breach of fiduciary duty claim (Count III).[2] The Court briefly addresses each in turn.

**A. Plaintiffs' quiet title claim against Millsap has no reasonable basis in law or fact.**

Plaintiffs' quiet title claim generally asserts that Defendants do not have a valid claim to the Property, but there are no specific allegations regarding Millsap. To be entitled to quiet title relief, the plaintiffs must establish, among other elements, that the defendant is claiming title to the property. *See Wyatt*, 2013 WL 6730298, at *3 (citing *Howard v. Radmanesh*, 586 S.W.2d

---

[2] The heading for Count III also asserts two other claims: conversion of a negotiable instrument and unjust enrichment. To the extent that allegations exist supporting these theories, they are strictly aimed at the actions of Liberty and BB&T. Therefore, the Court does not address these claims in determining whether Millsap was fraudulently joined.

4

67, 68 (Mo. Ct. App. 1979)). Much like Plaintiffs' initial complaint (Doc. 1-1), the Amended Complaint generally alleges that Millsap's only interest in the Property derived from its trustee duties under the Deed of Trust. This limited interest in the Property was extinguished upon foreclosure. *See id.* Thus, there is no basis to conclude that Millsap is currently claiming any interest in the Property. Since there is no reasonable basis in fact to impose quiet title relief against Millsap, the Court finds it was fraudulently joined to Count I.

### B. Plaintiffs' wrongful foreclosure claim against Millsap has no reasonable basis in law or fact.

The Amended Complaint also asserts a wrongful foreclosure claim against Millsap. Aggrieved homeowners may seek either equitable or legal relief for an alleged wrongful foreclosure. *Lackey v. Wells Fargo Bank, N.A.*, 747 F.3d 1033, 1037 (8th Cir. 2014). An equitable claim requires the plaintiffs to allege "wrongful acts that are sufficient to render the sale void." *See id.* (citing *Fields v. Millsap & Singer, P.C.*, 295 S.W.3d 567, 571-72 (Mo. Ct. App. 2009)). A claim for damages, however, requires the plaintiffs to plead, among other elements, that their loan was not in default at the time of foreclosure. *Id.*

Here, the Amended Complaint does not allege a lack of default by Plaintiffs. Thus, if any claim exists against Millsap, it is one for equitable relief. Count II only contains two allegations of "wrongful acts" allegedly committed by Millsap: (1) that it proceeded with the foreclosure sale despite knowing that BB&T neither possessed the Note nor had the right to enforce it; and (2) that it impermissibly accepted a credit bid from BB&T. Neither allegation contains a reasonable basis in law or fact.

The allegations concerning possession and right to enforce supply no basis for liability. Although a lender need not physically possess a promissory note in order to foreclose, *Barnes v. Fed. Home Loan Mortg. Corp.*, No. 12-CV-06062, 2013 WL 1314200 (W.D. Mo. Mar. 28,

5

2013), *aff'd*, 550 F. App'x 340, 341 (8th Cir. 2014), it must have the legal right to enforce it. *See Lackey*, 747 F.3d at 1037. The Amended Complaint cursorily alleges that Millsap knew BB&T neither physically possessed nor had a right to enforce the Note. However, an affidavit from BB&T Assistant Vice President Richard Miller and a copy of the Note, which are attached to the summary judgment motion, demonstrate that BB&T has been the legal owner and sole possessor of the Note since 2009. *See* (Docs. 22 at 28, 22-1 at 3); *Block*, 665 F.3d at 945 (noting courts may look beyond the pleadings to determine the factual basis of claims). Since BB&T had the right to enforce the Note, Millsap did not wrongfully foreclose when ordered to do so. Thus, there is no factual support underlying these conclusory allegations.

Similarly unavailing is the theory that acceptance of a credit bid nullifies an otherwise valid foreclosure sale. A trustee may accept a credit bid at foreclosure even if a deed of trust contains a cash-only provision. *See Hallquist v. United Home Loans, Inc.*, 715 F.3d 1040, 1047 (8th Cir. 2013) (interpreting Missouri law). Therefore, Millsap's acceptance of BB&T's credit bid did not invalidate the foreclosure.

With no legal or factual basis for the wrongful foreclosure claims asserted against Millsap, the Court finds it was fraudulently joined to Count II.

### C. Plaintiffs' fiduciary duty claim against Millsap has no reasonable basis in law or fact.

The only allegations in Count III about Millsap concern whether it breached its fiduciary duties during the foreclosure process. In particular, Plaintiffs allege that they did so by accepting a credit bid in lieu of cash and by failing to make an investigation into whether BB&T or Liberty had the right to enforce the Note.

Neither allegation would legally entitle Plaintiffs to relief. As established earlier, a trustee may accept a credit bid, so no breach exists for this permissible conduct. *See Hallquist*,

6

Case 4:13-cv-00317-DGK   Document 39   Filed 01/21/15   Page 6 of 12

715 F.3d at 1047. Second, although a trustee must impartially conduct the foreclosure sale, this duty does not require it to investigate prior to foreclosure, absent unusual circumstances. *Id.* at 1047-48 (citing *Spires v. Edgar*, 513 S.W.2d 372, 378 (Mo. 1974)). Here, Plaintiffs do not suggest unusual circumstances existed. As discussed above, although Plaintiffs cursorily allege that Millsap knew BB&T was not legally entitled to enforce the Note, the record plainly contradicts this assertion. Thus, Millsap was not obligated to investigate prior to foreclosing.

Since the Court once again finds that Millsap has been fraudulently joined to this litigation, all claims against it are DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction. *See Wivell*, 2014 WL 6463030, at *5.

**II. Liberty and BB&T are entitled to summary judgment.**

With the only non-diverse defendant now dismissed, the Court turns to Liberty and BB&T's motion for summary judgment. They move on all three counts and support their arguments with citation to legal authority and attached materials. Plaintiffs' three-page response contains neither, but the Court must nevertheless determine whether movants have demonstrated their entitlement to summary judgment on each count.

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has satisfied his or her initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The

7

Case 4:13-cv-00317-DGK   Document 39   Filed 01/21/15   Page 7 of 12

nonmoving party must set forth specific facts showing there is a genuine issue for trial, *Anderson*, 477 U.S. at 248, but the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). But when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 585 (2009)).

Because Plaintiffs' quiet title claim (Count I) essentially depends upon whether a wrongful foreclosure (Count II) occurred, the Court addresses Count II first.

### A. Liberty and BB&T are entitled to summary judgment on Count II.

Although the Amended Complaint's failure to plead lack of default precludes a damages claim for wrongful foreclosure, Plaintiffs may still succeed on an equitable claim if they demonstrate that Liberty or BB&T committed acts sufficient to invalidate the sale. *See Lackey*, 747 F.3d at 1037. Plaintiffs appear to contend that the foreclosure sale was rendered invalid because the Note was impermissibly separated from the Deed of Trust and because BB&T neither physically possessed nor had the legal right to enforce the Note when it appointed Millsap and foreclosed on the Property.[3] The undisputed material facts, however, contradict these contentions.

---

[3] The Amended Complaint contains a litany of other allegations regarding alleged wrongful acts. The Court does not address these allegations as they are conclusory, implausible, and wholly legally unfounded. *See, e.g.*, *Weger v. City of Ladue*, 500 F.3d 710, 728 (8th Cir. 2007) (noting that a plaintiff cannot rely upon unsupported, conclusory allegations from the complaint to avoid summary judgment). The allegations addressed in this subsection are the only ones that enjoy some tangential record support.

First, the Note was not impermissibly separated from the Deed of Trust. Under Missouri law, "if a promissory note and the accompanying deed of trust are split, then the note becomes unsecured and the holder of the note may not foreclose on the secured property to recover for the debt." *Timber Point Props. III, LLC v. Bank of Am.*, *N.A.*, No. 13-3449-CV-S-DGK, 2014 WL 7005195, at *4 (W.D. Mo. Dec. 10, 2014) (citing *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo. Ct. App. 2009)). However, when a promissory note is transferred, the deed of trust automatically follows it. *Id.*

The undisputed material facts show that shortly after the May 2009 loan origination Liberty endorsed the Note to BB&T. Upon this assignment, the Deed of Trust also transferred to BB&T, even though no recordation occurred. *See In re Box*, No. 10-20086, 2010 WL 2228289, at *5 (Bankr. W.D. Mo. June 3, 2010). The Note has remained in BB&T's possession ever since this initial assignment, and there is no support, beyond pure conjecture, for Plaintiffs' theory that a securitization scheme caused a split. *See RSBI Aerospace, Inc.*, 49 F.3d at 402.

Nor can the Court conclude that MERS's later official transfer of the Deed of Trust to BB&T rendered the Note unsecured. On January 7, 2013, MERS, on behalf of Liberty, executed an official transfer of the Deed of Trust to BB&T. This assignment and recording were merely ceremonial as the Deed of Trust had previously been transferred through the 2009 Note assignment. Thus, the Court cannot conclude that any split between the Note and Deed of Trust occurred, let alone that any such split invalidated the foreclosure sale. *See Lackey*, 747 F.3d at 1038 (finding no wrongful foreclosure where the deed of trust was officially transferred to the foreclosing party long after the promissory note had been transferred to that same party).

Second, BB&T had the legal authority to appoint Millsap and foreclose. Liberty and Plaintiffs officially executed the Note and Deed of Trust in May 2009. Liberty assigned the Note

9

to BB&T shortly thereafter. This vested BB&T with the authority to enforce the Note and the Deed of Trust. After Plaintiffs' default in 2012, BB&T initiated a chain of transfers to facilitate the foreclosure process, which began with MERS *officially* assigning the Deed of Trust to BB&T. At this point, BB&T invoked its appointment powers under the Deed of Trust by replacing Charterland with Millsap. Once installed as successor trustee, Millsap exercised BB&T's foreclosure powers by giving notice, holding a foreclosure sale, and selling to the highest bidder. Throughout this process, BB&T not only physically possessed the Note but also enjoyed the legal authority to enforce it. And nothing from the above sequence suggests Liberty or BB&T committed other wrongful acts sufficient to set aside the foreclosure sale. *See Lackey*, 747 F.3d at 1038 (finding that affidavits and copies of the promissory note and deed of trust entitled defendants to summary judgment on plaintiff's claims of wrongful foreclosure premised on unsupported claims that the lender did not hold the note). Nor did BB&T's failure to produce the Note taint the foreclosure, because no such requirement existed. *See id.* (noting that Missouri law does not require production of the note prior to foreclosure); Doc. 22-2 (containing no such requirement).

Because no wrongful acts occurred during the foreclosure process, BB&T and Liberty are entitled to summary judgment on Count II.

### B. Liberty and BB&T are entitled to summary judgment on Count I.

Plaintiffs' quiet title theory appears to be predicated on the notion that BB&T and Liberty wrongfully foreclosed upon the Property. As determined above, however, neither defendant committed a wrongful act sufficient to invalidate the foreclosure sale. Plaintiffs therefore cannot show that they have superior title to the Property, which entitles BB&T and Liberty to summary

10

judgment. *See Lackey*, 747 F.3d at 1040 (citing *Ollison v. Vill. of Climax Springs*, 916 S.W.2d 198, 203 (Mo. 1996)).

### C. Liberty and BB&T are entitled to summary judgment on Count III.

Count III purports to raise three separate claims for relief: unjust enrichment, breach of fiduciary duty, and conversion of a negotiable instrument. None of these theories are sustainable given the undisputed facts.

Under Missouri law, a claim for unjust enrichment only lies when no express contract exists. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 854 (8th Cir. 2014). Here, the Note and Deed of Trust governed the lender/lendee relationship between the parties, thereby precluding any unjust enrichment claims. Even in absence of these contracts, neither the Amended Complaint nor the undisputed facts show that Plaintiffs conferred a benefit upon BB&T or Liberty or that they inequitably retained that benefit, both of which are required for a submissible case of unjust enrichment. *See id.* Thus, Plaintiffs' unjust enrichment claim fails.

Similarly unavailing is Plaintiffs' allegation that BB&T or Liberty breached the fiduciary duties owed to them. In absence of special circumstances, there is no fiduciary relationship between a debtor and creditor. *See Neal v. Sparks*, 773 S.W.2d 481, 486-87 (Mo. Ct. App. 1989) (citing *Centerre Bank of Kansas City v. Distribs., Inc.*, 705 S.W.2d 42, 53 (Mo. Ct. App. 1985)). And Plaintiffs fail to identify any fiduciary duties imposed by the Deed of Trust, or explain how Liberty or BB&T breached any such duties. On the contrary, BB&T conducted the foreclosure process in conformance with the Deed of Trust. Accordingly, BB&T and Liberty are entitled to judgment as a matter of law on Plaintiffs' fiduciary duty claim.

Plaintiffs' conversion claim also fails as a matter of law. This claim comprises three allegations: (1) BB&T converted their money by accepting monthly payments without the

11

authority to do so; (2) BB&T converted the Note; and (3) BB&T converted their home by purchasing it with a credit bid at the foreclosure sale. The first allegation is both legally and factually unfounded. Under Missouri law, a conversion claim generally does not lie for the alleged wrongful taking of money. *In re Estate of Boatright*, 88 S.W.3d 500, 506 (Mo. Ct. App. 2002). But assuming it did exist here, BB&T as the possessor and lawful holder of the Note had every right to accept mortgage payments from Plaintiffs. *See Lafayette v. Courtney*, 189 S.W.3d 207, 210 (Mo. Ct. App. 2006) (noting that plaintiff must establish that defendant's exercise of control over property was unauthorized). As for the Note conversion allegation, although conversion is a viable cause of action for the unlawful taking of a promissory note, *see Pollock v. Berlin-Wheeler, Inc.*, 112 S.W.3d 73, 77 (Mo. Ct. App. 2003), any such wrong would have been felt by Liberty as the original holder of the Note. Therefore, any cause of action for conversion would lie with Liberty, not Plaintiffs. Finally, putting aside whether conversion exists for the alleged wrongful taking of real property, BB&T's purchase of the Property via a credit bid was not improper. *See Hallquist*, 715 F.3d at 1047.

## Conclusion

Because Plaintiffs fraudulently joined Millsap to this litigation, all claims asserted against it are DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction. Finding no dispute of material fact and that judgment as a matter of law is proper on all counts, the Court GRANTS Liberty and BB&T's motion for summary judgment (Doc. 21).

**IT IS SO ORDERED.**

Date: January 21, 2015        /s/ Greg Kays
                              GREG KAYS, CHIEF JUDGE
                              UNITED STATES DISTRICT COURT